UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

——————

ERIC DEXTER WELCH,

                 Petitioner,                  Case No. 2:13-cv-115 / 2:10-cr-8

v.                                           Honorable R. Allan Edgar

UNITED STATES OF AMERICA,

                 Respondent.

_____/

## <u>MEMORANDUM AND ORDER</u>

Federal prisoner Eric Dexter Welch moves *pro se* for post-conviction relief under 28 U.S.C. § 2255, claiming violations of his Sixth Amendment right to effective assistance of counsel and his Fifth Amendment right to due process.  Respondent United States of America opposes the § 2255 motion and argues that all Welch's claims should be denied without an evidentiary hearing.  After reviewing the record, the Court concludes that the motion must be denied.  The record conclusively shows that Welch's motion is without merit and he is not entitled to any relief under 28 U.S.C. § 2255.  There is no need for an evidentiary hearing.

## <u>Standard of Review</u>

28 U.S.C. § 2255 provides that a federal prisoner may make a motion to vacate, set aside, or correct a judgment of conviction or sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the federal

district court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by federal law, or is otherwise subject to collateral attack.

Welch bears the burden of establishing an error of federal constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). As a threshold standard to relief, a § 2255 motion must allege: (1) an error of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

To obtain relief under 28 U.S.C. § 2255 for a nonconstitutional error, Welch must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant v. United States*, 72 F.3d 503, 505-06 (6th Cir. 1996). Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under 28 U.S.C. § 2255 to do service for a direct

appeal. *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant v. United States*, 72 F.3d at 506.

In the present case an evidentiary hearing is unnecessary because there are no genuine issues of material fact in dispute and the record conclusively shows that Welch is not entitled to any relief under § 2255. *Cope v. United States*, 272 Fed. Appx. 445, 451 (6th Cir. 2008). An evidentiary hearing is not required in a 28 U.S.C. § 2255 proceeding where the petitioner's factual allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Marcusse v. United States*, 785 F. Supp.2d 654, 661 (W.D. Mich. 2011); *Brain v. United States*, 2011 WL 1343344, at *2 (E.D. Tenn. April 8, 2011); *Jones v. United States*, 2010 WL 1882122, at *1 (E.D. Tenn. May 11, 2010).

The burden is on Welch to articulate sufficient facts to state a viable claim for relief. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it merely makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Brain*, 2011 WL 1343344, at *2; *Jones*, 2010 WL 1882122, at *2.

## Facts and Procedural History

The Michigan State Police began investigating Welch in 2006 after being contacted by Stephanie LaBonte. LaBonte alleged that she and Welch had a prior history, and he had

3

previously paid her for sex.  She stated that Welch offered to pay her to find a minor for him to have sex with.  The Michigan State Police arranged for LaBonte to tell Welch of a fictitious fourteen year old cousin named "Shannon."  A meeting was set up for May 29, 2007 at Burger King in Calumet, Michigan.  Welch was arrested near that location with $60.00 in cash, a box of condoms, and a box of Marlboro cigarettes which Shannon had requested.  Detective Sergeant Tom Rajala spoke with Welch on the date that he was arrested.  2:10-cr-8 Tr. Trans., Doc. No. 70, p. ID 437.  At that time, Rajala asked Welch if he could go to his home and obtain his computers and have them forensically examined, and Welch agreed.  *Id.*, p. ID 438.  In his supplemental incident report, Rajala stated that Welch was asked if he had any child pornography on his computer and responded by denying having any and consenting to Rajala obtaining his computer and completing a forensic examination.  Doc. No. 4-1, Ex. C, p. ID 149.  Rajala subsequently went to Welch's residence and asked his wife, Krista Welch, for permission to take the computers for the purpose of having them forensically examined.  2:10-cr-8 Tr. Trans., Doc. No. 70, p. ID 439.  Krista Welch signed a consent form indicating that she gave consent for the residence's computer and laptop to be seized.  *Id.*; 2:10-cr-8 Gov't Ex. 36.  Rajala took the computers and brought them to the property room in the Michigan State Police's Calumet post.  *Id.*, p. ID 444.  The following day, they were transported to the Iron Mountain post.  *Id.*

On June 6, 2007, Rajala applied for a search warrant from the Houghton County district court to have the computers forensically examined.  *Id.*  In the affidavit, Rajala stated that Welch and Krista Welch gave consent to seize and examine the computers for sexually explicit and child pornography material.  Doc. No. 4-3, Ex. M, p. ID 249.  He also explained that he was involved in an investigation involving Welch, a registered sex offender, soliciting

4

a 14 year old female, "Shannon," for immoral purposes.  *Id*.  Rajala stated that he

supervised phone conversations between Welch and a person Welch believed to be 14

years of age, who Welch solicited for sexual activity.  *Id.*  He stated that he was aware that

Welch had discussed sexual activity on MySpace.com with 18 year old Stephanie Labonte,

including his attempts to contact "Shannon."  *Id*.  Rajala stated that he assisted in arresting

Welch after Welch arrived at a predetermined location to meet with a person he believed

to be 14 years of age for the purpose of sexual activity.  *Id*.  He stated that Welch admitted

to him that Welch needs counseling and had "fallen off the wagon" concerning his sexual

tendencies and desires.  *Id*.  Rajala stated that he believed that an examination of the

computers may reveal evidence related to the current investigation and possible child

pornography.  *Id*.  The search warrant was signed by a judge or magistrate.  *Id*., p. ID 249.

Detective Sergeant Tim Blanksvard worked at the Iron Mountain post, and he

performed the forensic exam of Welch's laptop computer.  Tr. Transc., 2:10-cr-8, Doc. No.

70, p. ID 454.  Blanksvard first used a "write blocker" to prevent data from being written onto

Welch's computer drive.  *Id.*, pp. ID 469-70.  Blanksvard then used a forensic tool kit to

make a "bit for bit" copy of the hard drive, creating an exact duplicate.  *Id*.  Blanksvard

followed a process to ensure that the mirror was an exact copy:

> There is a hash value that's generated by the Forensic Tool Kit,
> which the hash value is – basically, the software tests the data,
> and makes sure that it comes up with a certain value that we
> call a hash value.  And it tests it before you start the copy, and
> it tests the copy, and then tests the target data after you make
> the copy.  And as long as everything matches, you know there
> is no corruption fo the data.

*Id.*, pp. ID 472-73.  Blanksvard found suspected child pornographic images on the copy of

the drive.  *Id.*, p. ID 466.  Blanksvard indicated that the images were found in the

unallocated space of the drive, where files remain after they are deleted from the master file table.  *Id.*, p. ID 460-65.  Welch was subsequently prosecuted by the state of Michigan for accosting a minor for immoral purposes, in violation of M.C.L. 750.145a and altering, programming or reprogramming a telecommunications device to conceal the place of origin, in violation of M.C.L. 750.540c(4).  He pled guilty to the accosting charge and no contest to the telecommunications charge.

In July of 2008, Immigrations and Customs Enforcement Agent Thomas Miller had a conversation with Rajala about an investigation involving a laptop that had turned up child pornography.  2:10-cr-8 Tr. Trans., Doc. No. 71, p. ID 637.  At Miller's request, Blanksvard turned over the image of Welch's hard drive to Miller.  *Id.*, Doc. No. 70, p. ID 467.  Miller sent the hard drive image to Special Agent Blair Babcock to have it analyzed.  *Id.*, Doc. No. 71, p. ID 639.  Babcock testified that he found anti-virus software on the hard drive image that requires a higher knowledge to operate than the average user has.  *Id.*, Doc. No. 70, pp. ID 502-03.  Babcock noted that the antivirus program updated itself several times a day, which was much more frequently than is done in a less sophisticated antivirus program.  *Id.*, p. ID 503.  Babcock also found an IP blocker, which blocks attempts to take over your computer from unknown web addresses.  *Id.*, p. ID 504.  Babcock additionally found a program designed to eliminate pop-up ads and other types of malware.  *Id.*, p. ID 505.  Finally, Babcock found a registry cleaner, which repairs things in the registry and eliminates temporary files off a computer.  *Id.*  Babcock asserted that, in his opinion, the user of the computer had taken great steps to keep malware and viruses off of the computer.  He further asserted that the user was sophisticated, given the unusual nature of the antivirus program.  *Id.*, p. ID 509.  He indicated that the user had looked at a website called

"booble.com," a pornography search engine, and searched for items to do with the term "Lolita." *Id.*, p. ID 515.

On February 10, 2010, a federal grand jury returned a single count indictment against Welch for possession of images of minors engaging in sexually explicit conduct in violation of 18 U.S.C. §§ 2252(a)(4)(b), 2252(b)(2), and 2256.  Welch was arrested on the indictment on March 4, 2010.  Miller asserted at trial that, in a post-arrest interview, Welch stated that he frequently used the laptop to search for pornography, and said that he must have viewed child pornography on the laptop since it contained child pornography.  Miller stated that Welch had also stated that his age of preference when searching for pornography was 14 to 15.  Federal Public Defender Paul A. Peterson was originally appointed to represent Welch, but on March 30, 2010, attorney Mark L. Dobias was appointed to replace Peterson.

On September 21, 2010, a federal grand jury returned a single count superseding indictment against Welch for possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B), 2252A(b)(2), and 22256(8)(A).  The case went to a jury trial on October 4 and 5, 2010.  Welch's counsel argued at trial that Welch was not aware that child pornography was stored on the unallocated space of his computer's hard drive.  The jury returned a guilty verdict.

Welch had been previously convicted of Attempted Criminal Sexual Conduct, 4th Degree involving a minor between the age of 13 and 15.  This prior offense triggered the mandatory minimum sentence set forth in 18 U.S.C. § 2252A(b)(2).

Welch was sentenced on December 15, 2010.  At the sentencing, the Court found Welch's offense level to be 33 with a criminal history of three, resulting in a guideline range

of 168 to 210 months. The Court sentenced Welch to a term of 168 months imprisonment, lifetime supervised release, and a $100 special assessment.

Welch took a direct appeal from his judgment of conviction and sentence to the Sixth Circuit Court of Appeals. On October 20, 2011, the Sixth Circuit affirmed his judgment of conviction and sentence, and dismissed the appeal. *United States v. Welch*, No. 10-2677. Welch filed a petition for writ of certiorari in the United States Supreme Court. On May 15, 2012, the Supreme Court denied Welch's petition.

<u>**Standard of Review for Claims of Ineffective Counsel**</u>

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the to right to assistance of counsel for his defense.. Ineffective counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

*Strickland* establishes a two-part test for deciding claims of ineffective counsel. First, Welch must show that his attorney's performance was deficient. Second, Welch is required to demonstrate that the attorney's deficient performance caused him to suffer actual prejudice. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell*, 320 F.3d 604, 616 (6th Cir. 2003). The first prong of the *Strickland* test requires Welch to show that his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Sowell*, 372 F.3d at 836; *Wickline v. Mitchell*, 319 F.3d 813, 819 (6th Cir. 2003); *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779,

785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995).  The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason*, 320 F.3d at 616-17; *Wickline*, 319 F.3d at 819; *Skaggs v. Parker*, 235 F.3d 261, 268 (6th Cir. 2000); *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable.  Strategic choices made by counsel after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has a duty to make a reasonable investigation under the circumstances or to make a reasonable decision that a particular investigation is unnecessary.  *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Welch to show that his attorney's deficient performance caused actual prejudice to his case.  *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993).  The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair.  *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d

9

at 270.  The Court must determine whether the performance of Welch's counsel was so manifestly deficient that defeat was snatched from the hands of probable victory.  *Thelen v. United States*,131 Fed. Appx. 61, 63 (6th Cir. 2005); *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Welch must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result would have been different and more favorable to him.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding.  *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason*, 320 F.3d at 617; *Wickline*, 319 F.3d at 819.  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

## Analysis

### I. Counsel's Failure to File a Motion to Suppress

Welch asserts that his counsel was ineffective in failing to file a motion to suppress the state search warrant that authorized the forensic search of Welch's computer.  Welch asserts that there is no evidence showing that he or Krista Welch consented to the search of the computer for pornography.  He further asserts that probable cause did not exist to search for child pornography.  Welch states that the affidavit filed in support of the search warrant contains false statements by Rajala, and that such statements, even if true, were insufficient to establish probable cause.  Welch argues that evidence of alleged child molestation is insufficient to establish probable cause of the possession of child

pornography, and says that he only consented to the searching of his emails and messages.  Welch also asserts that the warrant was overbroad.  Finally, Welch asserts that the warrant was invalid because of the delay in obtaining it.

To be successful in his argument, Welch must meet the two-prong *Strickland* standard.  Specifically, he must "show both that his trial attorney was 'objectively unreasonable' in not filing a motion to suppress, and that, had he filed a motion to suppress, there is a reasonable probability that the verdict would have been different."  *Hadley v. United States*, 2010 WL 2573490, at *3 (W.D. Mich. June 22, 2010) (Quist, J.), *citing Kimmelman v. Morrison*, 477 U.S. 365 (1986).

The government asserts that a motion to suppress the search warrant would have been frivolous because both Welch and Krista Welch consented to the seizure and subsequent search of the computer.  "Consent is a well-recognized exception to the Fourth Amendment's warrant requirement."  *Peterson v. Smith*, 510 Fed. Appx. 356, 364 (6th Cir. 2013), *citing Illinois v. Rodriguez*, 497 U.S. 177, 185-86 (1990).  In his motion, Welch asserts that neither he nor Krista Welch consented to the search of the computers for child pornography.  "The standard for measuring the scope of a suspect's consent is one of objective reasonableness – in other words, 'what would the typical reasonable person have understood by the exchange between the officer and the suspect?"  *United States v. Jackson*, 468 Fed. Appx. 447, 456 (6th Cir. 2012), *citing United States v. Canipe*, 569 F.3d 597, 604 (6th Cir. 2009).

At trial, Rajala stated the following during his testimony:

> Q: During the course of the time that you were interviewing Mr. Welch, did you make any requests of him?

> A: Yes.  I asked him if I could obtain and examine his computers at home, or if I could go to his home and obtain his computers and have those forensically examined.
> Q: And what did he – Did he consent to that?
> A: Yes.  He granted me permission to go to his home.  We were in Calumet at the time, so he allowed me to go to Houghton, which is in Houghton County, to obtain those computers.

2:10-cr-8, Doc. No. 70, p. ID 438.  During cross-examination, Rajala stated the following:

> Q: And – And did you explain to [Krista Welch] that, if you (sic) did not consent, you – you, of course, could get a search warrant; correct?
> A: That's not correct.
> Q: Okay.  You just asked her, like a knock and talk, could I have the computers?
> A: Yes.  I – I showed up at the – at her house, and after I explained the purpose of being there, and then I asked her for the consent to search her residence, and for the – and to get the computers.  And she very cooperatively said, yep, the computers are upstairs, and she – she says, follow me....
> Q: Did you explain to her what "forensically examine" meant?
> A: Yes.
> Q: And then, of course, Mr. Welch, in your interaction with him earlier in the evening, he said – he allowed you to take the computer; right?
> A: Yes, he did.
> Q: Consented – Prior to him consenting to you taking the computer, did he describe what computer he had?
> A: I don't recall if he did.
> Q: And then, once again, the term "forensically examine," did you discuss that term with him?
> A: Specifically, I don't recall if I used it – if I actually used the term "forensic," but I did make a specific request to look for – to look for certain information on the computer, and I explained to him what certain information I was looking for.
> Q: And he consented?
> A: Yes, he did.

*Id.*, pp. ID 448-49.

Welch does not deny that Rajala informed both himself and Krista Welch that Rajala planned on having the computers examined, and that they both subsequently gave consent. Rather, Welch asserts that Rajala never asked him if he had child pornography and that

12

Welch  never agreed to have his computers examined for the purpose of looking for child pornography.  Welch has also attached an affidavit from Krista Welch, in which Krista Welch states that Rajala never mentioned anything about child pornography when asking her for her consent to seize the computers.  Doc. No. 4-2, Ex. G, p. ID 187.

Regardless of whether the presence of child pornography was ever discussed, Welch does not dispute that Rajala obtained his permission to examine his computers.  Krista Welch also gave permission for a forensic examination, and Welch does not argue that she did not have the apparent authority to authorize the search of Welch's laptop.  Welch and Krista Welch agreed to an examination of the laptop, and the subsequent examination led to the discovery of the child pornography.  Welch's and Krista Welch's assertions that Rajala did not ask them if he could search for child pornography on the computer are irrelevant.  Consent was given for the search.  Furthermore, the evidence indicates that Welch's counsel reasonably believed that consent had been given.  In his affidavit, Dobias states the following:

> I did not file a suppression motion because Petitioner's wife consented to the seizure and search of the computer on the night that petitioner was arrested.  In addition, I did not find meritorious grounds to challenge the search warrant.  Finally[,] the images of child pornography would have been inevitably discovered.

Dobias Aff., Doc. No. 20, p. ID 377, ¶ 5.  Welch gives no indication that he informed Dobias that he and Krista Welch had only given limited consent for the search of the computer.  It was not unreasonable for Dobias to conclude that consent had been given for the search that occurred.

The government further asserts that the delay in seeking the search warrant did not violate Welch's possessory interest in his computer.  As the government points out, a

13

search warrant was not required in this case, since consent was given and was not withdrawn.  The delay is therefore irrelevant.  *See United States v. Murinko*, 410 Fed. Appx. 2, 4 (9th Cir. Oct. 22, 2010).

Finally, the government asserts that probable cause was established in the search warrant that the computer would contain electronic evidence of Welch's online conversations regarding "Shannon."  Even if the search had been confined to looking for that evidence, the government states, the evidence of child pornography would have been inevitably discovered.

The Sixth Circuit has not addressed the issue of inevitable discovery during a computer search.  However, a case within the First Circuit, *United States v. Crespo-Rios*, guides the Court's analysis of this issue.  645 F.3d 37 (1st Cir. 2011).  In that case, a warrant was issued to search for evidence of the crimes of transfer of obscene material to a minor and coercion or enticement of a minor.  *Id.* at 40.  A computer system, external hard drive, and CDs were seized as part of the search.  *Id.*  Child pornography was found on the computer and the external hard drive, and the defendant moved to suppress it.  *Id.* at 41.  The First Circuit found that, regardless of whether probable cause existed to search for child pornography, the evidence was admissible under the inevitable discovery doctrine.  *Id.* at 42.  The court explained that the inevitable discovery exception will apply if the following test is met:

> (i) the lawful means of its discovery are independent and would necessarily have been employed, (ii) discovery by that means is in fact inevitable, and (iii) application of the doctrine in a particular case will not sully the prophylaxis of the Fourth Amendment.

*Id.* at 42, *quoting United States v. Hughes*, 640 F.3d 428, 440 (1st Cir. 2011).  The court found that the first prong was met because there was probable cause to search the computer and hard drive for some of the evidence listed in the warrant.  The same is true in the present case, since there was probable cause to search for evidence of the crime of accosting a minor for immoral purposes.  The court in *Crespo-Rios* next found that the second prong had been met.  In reaching that determination, the court stated the following:

> we conclude that in the course of searching Crespo's computer for evidence of his interactions with [the minor]..., government agents would have inevitably discovered the child pornography. When searching digital media for "chats" and other evidence of enticement, government agents cannot simply search certain folders or types of files for keywords.  First, like paper files, digital files may be mislabeled. ... The suffixes or extensions of file names, which generally indicate file types, may be manipulated to disguise the true file types... Thus, in searching for evidence of Crespo's interactions with [the minor] and other purported minors, forensic experts would have inevitably discovered the child pornography that Crespo now seeks to suppress.

*Crespo-Rios*, 645 F.3d at 43-44 (internal citations omitted).  The Court makes the same determination in the present case.  Finally, the First Circuit found that the third prong was met, noting that the application of the doctrine in that case would not "provide an incentive for police misconduct or significantly weaken fourth amendment protection."  *Id*. at 44 (internal citation omitted).  This Court makes the same finding in this case.  The inevitable discovery doctrine applies in this case.

Regardless of whether or not there was probable cause to search for child pornography, the child pornography would have been inevitably discovered.  Welch's counsel's failure to file a motion to suppress the search warrant did not fall below an objective standard of reasonableness.

Welch argues that the evidence of the image of the hard drive should have been suppressed because it was held in a Michigan State Police post storage lab for at least thirteen months after official orders had been received to destroy it.  Welch states that the evidence was kept in violation of Michigan State Police policy that mandated its destruction. Welch fails to show how this alleged policy violation violated his Constitutional rights.  This argument is without merit.

Welch also appears to argue that the fact that mirror image copy was retained following the 2007 state case violated state and federal law that prohibits the possession of child pornography, and therefore should have been suppressed.  That argument is also without merit.

Finally, Welch argues that his counsel was ineffective for failing to file a motion to suppress the evidence because the evidence had been "tainted by a shattered chain of custody critical to the reliability of scientific evidence."  Welch asserts that, after the evidence was seized on May 29, 2007, it took 2.5 days to make it to Iron Mountain and was carried by three different officers, none of whom signed out the appropriate forms.  Welch states that Blanskvard used an outdated form to transfer the evidence to Miller.

The government points to Dobias's affidavit, in which he states the following:

> I reviewed the facts and circumstances pertaining to the chain of custody and there were no legal or factual basis for such a motion for the reason that the chain of custody goes to the weight and not to the admissibility of the evidence.

Dobias Aff., Doc. No. 20, p. ID 378, ¶ 7.

As Dobias correctly point out, "[a]bsent a clear abuse of discretion, 'challenges to the chain of custody go to the weight of the evidence, not its admissibility." *United States v. Logan*, 372 Fed. Appx. 601, 607 (6th Cir. Apr. 8, 2010), *quoting United States v. Allen*, 106

F.3d 695, 700 (6th Cir. 1997).  "[A] missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material aspect."  *Id.*, *quoting United States v. Robinson*, 1996 WL 732297, at *2 (6th Cir. Dec. 19, 1996).  As the government points out, Welch does not argue that the evidence was altered in a material aspect or that it was not what it purported to be, a mirror image of the hard drive on his computer.  He instead argues that there are problems with the chain of custody.  Such arguments go to the weight of the evidence. Welch's counsel was therefore not ineffective for not filing a motion to suppress on this basis.

*II. Counsel's "failure to present evidence or call witnesses to demonstrate obstruction of justice, witness tampering, or perjury"*

Welch argues that his counsel was ineffective for failing to present evidence of obstruction of justice.  Specifically, Welch asserts that Rajala and Blanksvard obstructed justice by failing to destroy the image copy of Welch's computer drive, by hiding the image copy of the hard drive, and by using an outdated form in the transfer of the evidence to Miller.  Welch states that 18 U.S.C. § 1503 and § 1519 were violated.

18 U.S.C. § 1503 punishes "[w]hoever corruptly ... influences, obstructs, or impedes, or endeavors to influence, or obstruct, or impede, the due administration of justice[.]" 18 U.S.C. § 1519 punishes "[w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible item with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States[.]" Welch fails to show how Rajala and Blanksvard's alleged actions, even if true, obstructed justice.  It is

17

unclear to the Court how failing to destroy a copy of a hard drive pursuant to Michigan State Police policy or how using an outdated form when transferring the evidence obstructed justice. Welch provides no support for his allegations that the copy was hidden. His counsel was not ineffective for failing to attempt to demonstrate the existence of obstruction of justice.

Welch asserts that the government engaged in witness tampering by prematurely ushering Krista Welch into the courtroom, thereby preventing her from testifying, and that Miller coerced Krista Welch into making statements against Welch during the presentence report interview. 18 U.S.C. § 1512 prohibits knowingly using intimidation, threatening, or corruptly persuading another person, or attempting to do so, or engaging in misleading conduct toward another person, with the intent to either:

> (1) influence, delay, or prevent the testimony of any person in an official proceeding;
> (2) cause or induce any person to --
> (A) withhold testimony... from an official proceeding.

18 U.S.C. § 1512(b). Welch appears to be arguing that the government prevented Krista Welch from testifying by ushering her into the courtroom, when a witness sequestration order that was in place prevented any potential witnesses from doing so. While Krista Welch had been subpoenaed as a government witness, the government did not call her. This does not constitute witness tampering. Furthermore, Welch concedes that Krista Welch was not going to be called as a defense witness. Welch does not provide any evidence that Miller coerced Krista Welch into making statements in her presentence report interview. Welch also argues that Krista Welch spoke to Miller following the trial, and he coerced her to adopt his story when speaking to the probation officer. Welch attaches Krista Welch's affidavit, in which she states the following:

18

My anxiety and paranoia, after seeing what the government is capable of doing (going back on a plea, lying on the stand) in order to get what they want, started to cloud my judgment even more.  It got to the point where I was floundering between my husband and the government.  This had me worried that I was persuaded to the point to believe that I shouldn't trust Eric when he was away on business, and so on.  The thought of siding with the government started to make a desperate sort of sense, as if that false loyalty would remove me and the boys from the situation at hand.  I had called Miller in 2010 after the trial in this state of mind, and took his cue on what to say to the U.S. Probation office (Josh Hechtmann, sp?)  After the anxiety and paranoia subsided, I calmly thought about the situation as a whole, and recanted things I had said to the U.S. Probation Office before Eric's sentencing.

Krista Welch Aff., Doc. No. 4-2, p. ID 192.  This statement, which constitutes the only evidence provided by Welch to support his allegation, is insufficient to show witness tampering.  Welch's witness tampering claim is without merit.

Welch argues that Miller committed perjury while testifying during trial.  Specifically, Welch asserts that Miller committed perjury when he stated that Welch had told him that he had a preference for fourteen to fifteen year old girls.  In support of this assertion, Welch attaches his own affidavit, in which he asserts that he did not make that statement to Miller, and Krista Welch's affidavit, in which she also states that Welch did not make that statement to Miller.  Welch also argues that Rajala committed perjury while testifying during trial.  Specifically, Welch asserts that Rajala committed perjury when he stated that the state court investigation of Welch was concerning an unrelated matter involving a computer.

The government responds by stating that Rajala was instructed to refer to the underlying state offense as an "unrelated case" because the parties had agreed that the information surrounding the underlying investigation would be highly prejudicial.  Welch has not provided evidence of perjury by Rajala.  Moreover, Dobias asserts in his affidavit that

he did not find any factual basis that would suggest perjury.  Dobias Aff., Doc. No. 20, p. ID 378, ¶ 8.  Even if Welch's counsel was aware of the alleged perjury by Miller, his options would have been to call Welch or Krista Welch to the stand to testify.  Since that would have subjected them to potentially damaging cross-examination about Welch's history, the decision not to call them to the stand falls within the realm of sound trial strategy.  Welch's perjury argument is without merit.

### III. Counsel's Advice to Welch Not to Testify

Welch asserts that his counsel was ineffective for advising him not to testify.  A criminal defendant's right to testify at trial is a fundamental right under the Fifth and Sixth Amendments of the Constitution.  *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987).  The right to testify at trial is person to the defendant and may only be relinquished or waived by the defendant.  A defendant's relinquishment or waiver of his right to testify must be knowing and intentional.  *United States v. Stover*, 474 F.3d 904, 908 (6th Cir. 2007); *United States v. Webber*, 208 F.3d 545, 550 (6th Cir. 2000).  The role of defense counsel is to advise the defendant whether he should testify, but it is ultimately a matter for the defendant to decide.  *Id*. at 551.

Welch indicates in his reply brief that he was not made aware by his counsel that he had a constitutional right to testify.  Because Welch never alerted the Court that he wanted to testify at trial, there is a strong presumption that his counsel adhered to the requirements of professional conduct and left the final decision whether to testify with Welch.  *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009); *Stover*, 474 F.3d at 908-09; *Webber*, 208 F.3d at 551.  Welch's bare, self-serving, after-the-fact allegations are insufficient to rebut and overcome this presumption of a waiver.  *Hodge*, 579 F.3d at 639.

The Court agrees with the government's assertion that Welch's counsel's advice not to testify constituted sound trial strategy.  Dobias stated the following with regard to this issue:

> My assistance to petitioner was not ineffective for the reason that Petitioner was advised that he should not testify on his behalf because he would be subject to cross-examination, particularly on the topics of accosting a child for immoral purposes which would be highly relevant to his knowledge of possession of child pornography as well as bolstering the Government's case with respect to petitioner's knowledge as evidence in the browsing history obtained on defendant's computer.

Dobias Aff., Doc. No. 20, p. ID 378, ¶ 9.  It was reasonable for Welch's counsel to advise him that the best strategy would be for Welch not to testify.  Welch's argument is without merit.

## IV. Counsel's Failure to Challenge the Indictment

Welch argues that his counsel was ineffective for failing to challenge the superseding indictment on the grounds that the statute that he was convicted of violating, 18 U.S.C. § 2252A(a)(5)(B), did not give him fair warning that his conduct was illegal.  18 U.S.C. § 2252A(a)(5)(B), as it existed at the time of Welch's offense, stated the following:

> Any person who knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, commits a criminal offense against the United States.

18 U.S.C. § 2252A(a)(5)(B) (2006).[1]  Welch states that, even if child pornography popped

up on his computer screen, he never saved or "possessed" the images.  Welch asserts that

it was an open question in the Sixth Circuit at the time of his trial whether someone who had

only viewed child pornography on a computer could be convicted of possessing child

pornography under this section of the statute.  Welch states he did not have fair warning

that viewing child pornography constituted illegal conduct, and that his counsel was

ineffective for failing to raise this issue.

Welch cannot establish the prejudice prong of the *Strickland* test.  To satisfy the

prejudice element, Welch must show there is a reasonable probability that, but for the

deficient performance of counsel, the indictment would have been dismissed.  As Welch

admits, it was an open question in the Sixth Circuit at the time of Welch's trial "whether

viewing child pornography on the internet [was], itself, a crime." *United States v. Frechette*,

583 F.3d 374, 383 n.3 (6th Cir. 2009) (Moore, J., dissenting). However, the jury instructions

in this case required the jury to find that Welch had "knowingly possessed one or more

images of child pornography[.]" 2:10-cr-8, Doc. No. 71, p. ID 696.  The instructions further

stated:

> The defendant acted "knowingly" if he was conscious and
> aware of his actions, realized what he was doing and what was
> happening around him, and he did not act because of
> ignorance, mistake or accident.

*Id.*, p. ID 697.  The Court stated the following with regard to possession:

> The government does not necessarily have to prove that the
> defendant physically possessed the child pornography for you
> to find him guilty of the crime.  The law recognizes two kinds of

---

[1] The statute was amended in 2008 to also include "knowingly access[ing] with the intent
to view" child pornography.  18 U.S.C. § 2252A(a)(5)(B) (2008).

22

possession, actual possession and constructive possession. Either one of these, if proved by the government, is enough to convict. To establish actual possession, the government must prove the defendant had direct physical control over the child pornography, and knew that he had control over it. To establish constructive possession, the government must prove the defendant had the right to exercise physical control over the child pornography, and knew that he had this right, and that the defendant intended to exercise physical control over the child pornography at some time, either directly or through other persons.

For example, if he left something with a friend, intending to come back later and pick it up, or intending to send someone else to pick it up for you, you would have constructive possession of it while it was in the actual possession of your friend. But understand that just being present where something is located does not equal possession. The government must prove the defendant had either actual or constructive possession of the child pornography, and knew that he did, for you to find him guilty of this crime...

*Id.*, pp. ID 699-700. Therefore, Welch's argument that mere viewing of child pornography cannot constitute possession is superfluous. The charge given to the jury required a finding that Welch had knowingly possessed the child pornography, and the jury made that finding.

Evidence was presented at trial that supported the jury's finding. Special Agent Blair Babcock testified at trial that he did an index search of Welch's computer, and found that "Lolita" had been searched for on the computer, including on the pornography search engine site "booble.com." He stated that "Lolita" is a reference to an underage girl. Babcock and Blanksvard both introduced evidence that their searches located evidence that web pages that advertised child pornography had been displayed on the computer. Babcock also stated that he found a program known as Tweak Now registry cleaner on the computer, which had the purpose of cleaning temporary internet files off the computer's

hard drive.  Babcock stated that this constituted evidence of a sophisticated computer user.

Evidence was presented that Welch knowingly possessed child pornography.

The jury instructions required the jury to find that Welch had possessed child

pornography.  Furthermore, there was evidence presented at trial to support the jury's

finding.  A motion to dismiss the indictment on the grounds of lack of fair warning would

have been futile.  Welch certainly cannot establish a reasonable probability that such a

motion would have been granted, and he therefore cannot establish prejudice.  This

ineffective assistance claim is without merit.

Welch asserts that his counsel was ineffective for failing to challenge the constructive

amendment of the superseding indictment.  As the Sixth Circuit has explained:

> "The Fifth Amendment guarantees that an accused be tried only
> on those offenses presented in an indictment and returned by
> a grand jury." *United States v. Manning*, 142 F.3d 336, 339 (6th
> Cir. 1998). A constructive indictment occurs "when the terms of
> the indictment are in effect altered by the presentation of
> evidence and jury instructions which modify essential elements
> of the offense charged such that there is a substantial likelihood
> that the defendant may have been convicted of an offense
> other than the one charged in the indictment." *United States v.
> Siemaszko*, 612 F.3d 450, 469-70 (6th Cir. 2010) (internal
> quotation marks omitted).

*United States v. Nixon*, 694 F.3d 623, 637 (6th Cir. 2012).  Welch argues that the

government, in arguing that viewing the child pornography constituted possession of it,

constructively amended the superseding indictment.

In order to determine whether a constructive amendment has occurred, the Court

must "review the evidence presented at trial, the jury instructions and the verdict forms

utilized by the jury."  *United States v. Kuehne*, 547 F.3d 667, 683-84 (6th Cir. 2008).  There

is not a substantial likelihood that Welch was convicted of an offense other than the one

charged in the indictment.  In effect, Welch is making the same argument as the fair warning argument discussed above.  For the same reasons, the Court finds that Welch's constructive amendment argument is without merit.

### Standard of Review for Claim of Actual Innocence

To prove actual innocence, a § 2255 movant must demonstrate his factual innocence and not mere legal insufficiency.  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  The Sixth Circuit has indicated that evidence that was not presented at trial may be considered "new" for purposes of showing actual innocence, regardless of whether the petitioner acted with reasonable diligence in discovering it and pursuing relief.  *Freeman v. Trombley*, 483 Fed. Appx. 51, 57 (6th Cir. 2012), *citing Souter v. Jones*, 395 F.3d 577, 596 (6th Cir. 2005).  However, "[t]he age of the information and the timing of its submission may be considered ... in assessing its reliability."  *Id.* (citation omitted).  There is a difference between a "gateway claim" and a "freestanding claim" of actual innocence.  *See House v. Bell*, 547 U.S. 518 (2006).  To demonstrate actual innocence as a gateway to permit a court to reach a defaulted claim, a § 2255 movant is required to present new evidence of his innocence that establishes "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. at 537.

A freestanding claim of actual innocence is an attempt to prove outright innocence. *See House*, 547 U.S. at 554-55; *see also Herrara v. Collins*, 506 U.S. 390, 417 (1993)

(recognizing the possibility of a freestanding actual innocence claim). Nevertheless, a freestanding claim of actual innocence has never been explicitly recognized by the Supreme Court. *House*, 547 U.S. at 555 (concluding "that whatever burden a hypothetical freestanding innocence claim would require this petitioner has not satisfied it"). The *House* Court did, however, establish that the standard for any freestanding innocence claims would be higher than the standard for a successful gateway innocence claim. *Id.* ("The sequence of the Court's decisions in *Herrera* and *Schlup* - first leaving unresolved the status of freestanding claims and then establishing the gateway standard - implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*"). Nevertheless, whether a claim of actual innocence is freestanding or a gateway claim, a "substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup*, 513 U.S. at 324.

## Analysis

Welch presents a number of exhibits that he asserts constitute new reliable evidence that establish his actual innocence. It is unclear how Exhibit O establishes actual innocence, as it appears to consist of a list of the sites visited by Welch on May 29, 2007. Furthermore, it is unclear which sites were adult pornography sites and which were child pornography sites. Exhibit O also includes a chart entitled "suspected CP identified by MSP with notes by Adam Kelly." Adam Kelly was a defense expert witness in computer forensics. The notes identify various image files, which Kelly has labeled as "Not sure" or "Probably not CP." There is no discussion of Kelly's methodology, or what is meant by those labels.

Welch next points to Exhibit P, which consists of an affidavit from Adam Kelly. Doc. No. 4-4, p. ID 281. In this affidavit, Kelly indicates that he "found no direct evidence that Mr. Welch had access to files located in unallocated space." *Id.*, p. ID 283. Kelly also indicates that he found no organized collection of child pornography on the computer, and that, when he did examine internet history, some of the URLs were due to "pop-up" or "pop-under sites." *Id.* Kelly explained his belief that the suspected child pornography that he found consisted of what were probably temporary internet files, and that temporary internet files are stored on a computer without any direction action by or consent of the user. *Id.*, pp. ID 283-84. This affidavit is insufficient to establish actual innocence. The fact that some of the URLs were due to pop-ups does not show that all the child pornography on the computer came from pop-ups. The fact that the files may not have been saved by Welch does not show that Welch did not intentionally view the files.

Welch attaches as Exhibit Q a list of "legal adult Lolita sites from Google." Doc. No. 4-4, p. ID 290. Welch provides no authentication for this list. It is unclear what the basis is for concluding that the sites listed are legal adult pornography sites. Instead, the exhibit appears to be an email with a list of websites from George and Susan Welch. This evidence is insufficient to establish actual innocence.

Welch attaches a list of "web definitions" of "pop-ups" and "pop-unders" as Exhibit B. It is not clear how this evidence is intended to show actual innocence, but it fails to do so. Finally, Welch attaches his own affidavit and the affidavit of Krista Welch. These affidavits provide, at most, impeachment evidence. They do not establish actual innocence. Welch has failed to meet the high standard require to establish an actual innocence claim.

### Supplemental Claim: Mandatory Minimum Sentence Imposition

Welch asserts that the Supreme Court's ruling in *Descamps v. United States*, 133 S.Ct. 2276 (2013) provides him relief from the mandatory minimum sentence imposed on him.  In *Descamps*, the Supreme Court held that "sentencing courts may not apply the modified categorical approach when the crime of which the defendant was convicted has a single, indivisible set of elements."  133 S.Ct. at 2282.  *Descamps* ruling is inapplicable to the present case, since Michigan's fourth degree criminal sexual conduct statute is a "divisible statute."  *United States v. Ferguson*, 681 F.3d 826, 835 (6th Cir. 2012).  Welch's argument is therefore without merit.

Next, Welch argues that his prior attempted criminal sexual conduct conviction did not trigger the mandatory minimum sentence provision in 18 U.S.C. § 2252A(b)(2) because his offense involved an attempt rather than a completed touching and because the mandatory minimum only applies when the prior offense relates to an act of sexual penetration.  18 U.S.C. § 2252A(b)(2) provides:

> ... if any person has a conviction under this chapter, ... or under the laws of any State relating to aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward, ... such person shall be fined under this title and imprisoned for not less than 10 years nor more than 20 years.

18 U.S.C. § 2252A(b)(2).  The sentencing court must apply the categorical approach to determine if a prior state offense qualifies.  Thus, the court must look to the fact of conviction and the statutory definition of the prior offense.  *Taylor v. United States*, 495 U.S. 575, 600 (1990).  The Michigan statute states the following:

> A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if any of the following circumstances exist:
> That other person is at least 13 years of age but less than 16 years of age, and the actor is 5 or more years older than that other person.

28

M.C.L. § 750.520e.  "Sexual contact" is defined as:

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner for: (i) revenge, (ii) to inflict humiliation, (iii) out of anger.

M.C.L. § 750.520a(q).

As the government points out, the federal statute includes punishment for attempting to engage in a sexual act with a minor.  *See* 18 U.S.C. § 2243(a).  If the federal crime of attempted sexual acts with a minor triggers the mandatory minimum provision, it follows that the state crime of attempted criminal sexual conduct with a minor would trigger it as well. Furthermore, § 2252A(b)(2) refers to federal statutes that do not require the act of physical touching to occur as triggering the mandatory minimum sentence.  It follows that the state crime similarly need not include physical touching to trigger the mandatory minimum.  *See United States v. Sonnenberg*, 556 F.3d 667, 670 (8th Cir. 2009) ("Prior federal convictions for which the mandatory minimum sentence is imposed are not limited to offenses in which there was sexual contact between a defendant and the victim.  We discern no intent on the part of Congress to impose such a limitation with regard to prior convictions under state law."), *citing United States v. Hubbard*, 480 F.3d 341, 347 (5th Cir. 2007).  Welch's arguments that his prior conviction was insufficient to trigger the mandatory minimum sentence because there was no touching or penetration are without merit.  Furthermore, the Court notes that Welch was given a minimum guideline sentence of 168 months, which is higher than the mandatory minimum sentence of ten years.  *See* 2:10-cr-8 Judgment, Doc.

29

No. 59, p. ID 157.  The fact that Welch's sentence was not increased by the application of the mandatory minimum enhancement further undercuts Welch's argument.

## **Conclusion**

Welch's motion for post-conviction relief pursuant to 28 U.S.C. § 2255 is DENIED AND DISMISSED WITH PREJUDICE.  Welch's motion for reconsideration [Doc. No. 34] and his motion to supplement [Doc. No. 38] are DENIED.  A judgment consistent with this Memorandum and Order will be entered.

SO ORDERED.


Dated: _____1/30/2014_____          _____*/s/ R. Allan Edgar*_____
                                                 R. Allan Edgar
                                                 United States District Judge